**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TINA ROUHIGILAVAN**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MARCO RUBIO,**[1]<br>**Secretary of State, *et. al.*,**<br><br>**Defendants.** | **Case No. 24-cv-02255 (GMH)** |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Tina Rouhigilavan, an Iranian national, filed an H-1B nonimmigrant visa application after she was hired by the University of California, Los Angeles, to engage in postdoctoral scholarship for the school's Department of Medicine. On January 17, 2024, Plaintiff was interviewed concerning her nonimmigrant visa application by the Consular Section of the U.S. Embassy in Dubai, United Arab Emirates. Shortly after the interview, Plaintiff was notified that her visa application was refused under Section 221(g) of the Immigration and Nationality Act ("INA"), subject to "administrative processing." As of the date of this Memorandum Opinion, Plaintiff's visa application remains refused and subject to administrative processing.

Plaintiff brings this suit to compel the Secretary of State and the Director of the State Department's Office of Screening, Analysis, and Coordination to complete the administrative processing and adjudication of her visa application. Plaintiff alleges three causes of action arising under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5

[1] The current Secretary of State Marco Rubio is substituted as Defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

U.S.C. §§ 555(b), 706(1), 706(2), claiming that the delay in processing her visa application is unreasonable and seeking an order compelling the government to timely adjudicate the application. Defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's claims fail for two threshold reasons: (1) that Plaintiff fails to allege a discrete, non-discretionary duty sufficient to state a claim for unreasonable delay under the Mandamus Act or the APA; and (2) that Plaintiff's claims are barred from judicial review under the doctrine of consular nonreviewability.

Upon consideration of Defendants' motion and the record,[2] the Court finds that, although Plaintiff has identified a discrete, nondiscretionary duty for a consular officer to issue or refuse a visa, Defendants fulfilled this duty by refusing the Plaintiff's application under Section 221(g) of the INA. Because Plaintiff has failed to identify any clear, nondiscretionary duty for the consular officer to do anything more with respect to her visa application, the motion to dismiss is granted.

## I. BACKGROUND

### I. Statutory and Regulatory Background

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*., authorizes consular officers to issue nonimmigrant visas to foreign nationals seeking to enter the United States. *See* 8 U.S.C. § 1201; 22 C.F.R. § 41.111. One of the primary methods by which nonimmigrants seek to enter the United States is through work-sponsored visas, called "H-1B" visas, which allow U.S. employers to temporarily employ foreign workers in specialty occupations. *See* 8 C.F.R. § 214.2(h)(1)(ii)(B); 8 U.S.C. § 1101(a)(15)(H).

[2] The docket entries relevant to this Memorandum Opinion are (1) the Complaint, ECF No. 1; (2) Defendants' Motion to Dismiss, ECF No. 7; (3) Plaintiff's Opposition, ECF No. 8; (4) Defendants' Reply, ECF No. 9; (5) Plaintiff's Notice of Supplemental Authority, ECF No. 15; and (6) Defendants' Response to Plaintiff's Notice of Supplemental Authority, ECF No. 16. Page numbers cited herein are those assigned by Court's CM/ECF system, and not the page numbers included in the filed document.

A nonimmigrant work visa application is initiated when an employer files an I-129 Petition for Non-Immigrant Worker on behalf of a foreign national employee. *See* 8 C.F.R. § 214.2(h)(2). Once the petition is approved, the foreign national employee, as well as his spouse and children, may apply for a nonimmigrant visa by submitting a DS-160 visa application. *See* 22 C.F.R. § 41.103; 8 C.F.R. § 214.2(h)(9)(iv); *see also* 8 U.S.C. § 1202(c). Once the application is submitted and fees paid, *see* 22 C.F.R. § 41.107, the applicant is required to attend an in-person interview with a consular officer. 8 U.S.C. § 1202(h); *see also id.* § 1202(d). The INA places the burden of proof on the applicant to establish eligibility to receive a visa. 8 U.S.C. § 1361.

Under INA Section 221(g)—the statutory provision under which Plaintiff's visa application was refused here—a consular officer shall refuse a visa if it appears that the application does not comply with the INA. *See* 8 U.S.C. § 1201(g); *see also* 22 C.F.R. § 40.6 ("A visa can be refused only upon a ground specifically set out in the law or implementing regulations."); 9 Foreign Affs. Manual ("FAM") 301.4-1(b)(14) (characterizing a Section 221(g) refusal as a refusal in which the "[a]pplication does not comply with the INA"). Specifically, a visa shall be refused under INA Section 221(g) if the consular officer determines "from statements in the application or in the papers submitted therewith," that (1) the applicant is ineligible to receive a visa under Section 1182 of the INA, which identifies classes of inadmissible aliens; (2) the application itself fails to comply with the INA or its regulations; or (3) "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa . . . under section 1182 [of the INA], or any other provision of law." 8 U.S.C. § 1201(g); *see also id.* § 1182. Among other things, Section 1182 permits consular officers to refuse visas based on health-related grounds, criminal-related grounds, and security-related grounds. *See id.* § 1182(a)(1)–(10). Upon refusing a visa, the

consular officer is required to "inform the alien of the ground(s) of ineligibility . . . and whether there is, in law or regulations, a mechanism . . . to overcome the refusal." 22 C.F.R. § 41.121(b)(1).

A refusal of a nonimmigrant visa under Section 221(g) may be overcome. *See* 9 FAM 403.10-4 ("[T]he applicant is entitled to present evidence to overcome a presumption or finding of ineligibility. It is the policy of the U.S. Government to give the applicant every reasonable opportunity to establish eligibility to receive a visa."); *see also* 8 U.S.C. § 1361 ("If such person fails to establish to the satisfaction of the consular officer that he is eligible to receive a visa . . . no visa or other document required for entry shall be issued to such person, . . . *unless* he establishes to the satisfaction of the Attorney General that he is not inadmissible under any provision of this chapter." (emphasis added)); *see generally* 9 FAM § 306.2-2(A)(a) (describing administrative process by which a visa applicant may overcome a visa refusal under Section 221(g)); *see also* U.S. Dep't of State, Admin. Processing Info., https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/4-4NK-RVZE] ("It is possible that a consular officer will reconsider a visa application refused under 221(g) at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible."). That said, according to the FAM, "[a] refusal under INA 221(g) is, legally, a refusal on the visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c).

**B. Factual Background**

Plaintiff is an Iranian national seeking an employment-based nonimmigrant visa. ECF No. 1, ¶¶ 2–3. Following her employer's submission of a petition for an H-1B visa on her behalf, Plaintiff filed a nonimmigrant visa application. *Id.*, ¶¶ 57–58. On January 17, 2024, Plaintiff interviewed with a consular officer at the U.S. Embassy in Dubai, United Arab Emirates. *Id.*, ¶

58. After the interview, and on the same day, she received a notice from the consular officer stating that her application had been refused under section 221(g) of the U.S. Immigration and Nationality Act and placed in "administrative processing." *See id.*, ¶ 58–59. That application has remained "refused" and subject to "administrative processing" since the date of her interview. *See id.*, ¶¶ 59–60. Plaintiff alleges that such delay while her application is undergoing administrative processing has caused severe hardship, including emotional and financial distress and the potential loss of her employment. *Id.*, ¶¶ 61–65.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

The "plaintiff bears the burden of establishing" subject matter jurisdiction. *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A motion to dismiss under Rule 12(b)(1) "presents a threshold challenge to the court's [subject-matter] jurisdiction" and concerns a court's ability to hear a particular claim. *Thomas v. Wash. Metro. Area Transit Auth.*, 305 F. Supp. 3d 77, 81 (D.D.C. 2018) (quoting *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)); *see* Fed. R. Civ. P. 12(b)(1). In weighing a Rule 12(b)(1) motion, courts must "'accept as true all of the factual allegations contained in the complaint' and draw all reasonable inferences in favor of the plaintiff." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (quoting *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008)). But courts are "not required . . . to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations." *Id.* (alteration in original) (quoting *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001)). Further, "a court 'may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the

case." *O'Gilvie v. Corp. for Nat'l Cmty. Serv.*, 802 F. Supp. 2d 77, 80–81 (D.D.C. 2011) (quoting *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)).

### B. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the complaint's sufficiency to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Courts are called to "accept[] as true" the well-pleaded factual allegations contained in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and to construe them "in the light most favorable to the plaintiff[]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016). *See also Mirv Holdings, LLC v. U.S. Gen. Servs. Admin.*, 454 F. Supp. 3d 33, 41 (D.D.C. 2020) ("In evaluating a motion to dismiss under Rule 12(b)(6), 'the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012))). Courts may also weigh "documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." *Vasaturo v. Peterka*, 177 F. Supp. 3d 509, 511 (D.D.C. 2016) (alterations in original) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). Ultimately, the complaint itself "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The moving party bears the burden of "prov[ing] that no legally cognizable claims for relief exist." *Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016) (quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2015)).

## III. DISCUSSION

Plaintiff asserts three causes of action arising under the Mandamus Act and the APA claiming that the delay in processing her visa application is unreasonable and seeking an order compelling the government to promptly adjudicate the application. ECF No. 1, ¶¶ 98–132. Defendants move to dismiss on two independent grounds. First, they contend that Plaintiff has failed to identify a clear, non-discretionary duty requiring Defendants to further process her visa applications following the refusal. ECF No. 7 at 10–14. Second, they argue that the doctrine of consular nonreviewability bars judicial review given that the consular officer has refused the visa application. *Id.* at 14–18. Ultimately, the Court finds it unnecessary to resolve the second argument because it agrees with the Defendants on the first. Accordingly, it will grant Defendants' motion to dismiss on that basis alone.

### A. Non-Discretionary Duty

Both APA and the Mandamus Act provide a cause of action for an agency's failure to take an action. *See* 5 U.S.C. § 706(1) (granting the reviewing court authority to "compel agency action unlawfully withheld or unreasonably delayed."); 28 U.S.C. § 1361 (granting district courts the jurisdiction to compel "any agency . . . to perform a duty owed to the plaintiff"). Here, Plaintiff proceeds under both, arguing that Defendants have a nondiscretionary duty to adjudicate the subject visa application within a reasonable time and that they failed to do so because Plaintiff's application remains in "administrative processing." ECF No. 8 at 19–20. Defendants respond that Plaintiff's claims should be dismissed because the visa applications were refused, and Plaintiff has not identified a clear, non-discretionary duty requiring the consular officer to take any action following the refusal. ECF No. 9 at 18. Thus, according to Defendants, there is no action that this Court could compel under either the Mandamus Act or APA. The Court agrees with Defendants.

Both the APA and mandamus claims require that the relevant agency must have a discrete, nondiscretionary duty to act. "Mandamus is an 'extraordinary remedy, reserved only for the most transparent violations of a clear duty to act.'" *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (quoting *in re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000)). To obtain a writ of mandamus, a petitioner must show, among other things, "that the agency has violated 'a crystal-clear legal duty.'" *Id.* (quoting *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)). Similarly, to proceed with an APA claim for unreasonable delay, a plaintiff must allege that an agency has "failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted). Therefore, to proceed under either the APA or the Mandamus Act on a claim of unreasonable delay, a plaintiff must allege "that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action." *Sharifishourabi v. Blinken*, No. 23-cv-3382, 2024 WL 3566226, at *5 (D.D.C. July 29, 2024) (quoting *Arabzada v. Donis*, 725 F. Supp. 3d 1, 11 (D.D.C. 2024)); *see also Norton*, 542 U.S. at 65 ("The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law (which includes, of course, agency regulations that have the force of law).").

Plaintiff contends that Defendants have a discrete and nondiscretionary duty to adjudicate the subject visa application within a reasonable time and that they failed to do so because the application remains pending in "administrative processing." ECF No. 8 at 11–17, 20–21. Defendants respond that the D.C. Circuit's recent unpublished decision in *Karimova v. Abate* is dispositive of this issue and of Plaintiff's claims more generally. ECF No. 9 at 9 (discussing *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam)). *Karimova* held that the consular official's rejection of a visa application subject to administrative

processing fulfilled any nondiscretionary duty that was owed. *Karimova*, 2024 WL 3517852, at *3. Setting aside whether *Karimova* is binding on this Court because it is unpublished,[3] the Court finds—as other judges have—its reasoning persuasive and adopts it for purposes of this decision.[4]

[3] The root of the confusion as to whether *Karimova* should be treated as binding lies in two conflicting D.C. Circuit Rules which address the precedential value of the Circuit's unpublished decisions. *See* D.C. Cir. Rule 32.1(b)(1)(B); D.C. Cir. Rule 36(e)(2). Rule 32.1(b)(1)(B) states that unpublished decisions entered after January 1, 2002 "may be cited as precedent." D.C. Cir. Rule 32.1(b)(1)(B); *see also* Fed. R. App. P 32.1(a) ("A court may not prohibit or restrict the citation of federal judicial opinions . . . designated as 'unpublished,' . . . and . . . issued on or after January 1, 2007."). Clear enough. But then D.C. Circuit Rule 36(e)(2) seemingly takes that back; it states that "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C. Cir. Rule 36(e)(2). Given that every unpublished decision necessarily reflects the panel's determination that the decision has "no precedential value," under Rule 36(e)(2), when, if ever, may an unpublished decision properly "be cited as precedent" under Rule 32.1(b)(1)(B)? The D.C. Circuit has not clearly answered this question. *See Verizon v. FCC*, 770 F.3d 961, 968 n.11 (D.C. Cir. 2014) (noting the tension between D.C. Cir. R. 32.1(b)(1) and 36(e)(2) and citing an unpublished decision "for its persuasive authority, and adopt[ing] its dicta as a holding"); *Head v. Wilson*, 792 F.3d 102, 109 & n.9 (D.C. Cir. 2015) (refusing to rely on an unpublished opinion entered before 2002 as precedent but noting, *in dicta*, that unpublished opinions entered after January 1, 2002 "may be cited as precedent" despite the language of Rule 36(e)(2)). Defendant relies on *Khaksari v. Chairman, Broad. Bd. of Governors*, 451 F. App'x 1, 4 (D.C. Cir. 2011), in which the D.C. Circuit noted that an unpublished decision "has the force of precedent," citing Rule 32.1(b)(1)(B). *See* ECF No. 9 at 10–11. But *Khaksari* is itself an unpublished decision, making reliance on it questionable for the same reason that *Karimova*'s precedential value is in doubt.

[4] *See Datta*, 2025 WL 752643, at *7 ("The Court agrees with the Circuit's analysis [in *Karimova*] and finds it persuasive."); *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 260 (E.D.N.C. 2024) ("*Karimova* is unpublished and non-binding. But the Court finds its reasoning persuasive . . . ."); *see also Deylami v. Kvien*, No. 23-cv-1393, 2025 WL 219064, at *5 (D.D.C. Jan. 16, 2025) (holding that "[t]he *Karimova* decision is fatal" to a claim brought under the APA); *Mojaver v. Garland*, No. 24-cv-0253, 2024 WL 4715419, at *2 (D.D.C. Nov. 07, 2024) ("*Karimova* addressed both mandamus and APA challenges to agency refusals of visa applications under INA § 221(g) for 'administrative processing' . . . and it is dispositive in this case." (internal citation omitted)); *Hemmat v. Blinken*, No. 23-cv-2085, 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024) ("The *Karimova* decision is fatal to Plaintiffs' claim of unreasonable delay."); *Ibrahim v. Spera*, No. 23-cv-3563, 2024 WL 4103702, at *1 (D.D.C. Sept. 6, 2024) ("[T]he Court agrees that the decision in *Karimova* requires the dismissal of this action[.]"); *Rahman v. Bouldin*, No. 25-cv-1836, 2025 WL 3248585, at *3 (D.D.C. Nov. 21, 2025) (finding *Karimova* to be non-binding but persuasive); *Baradaran v. Rubio*, No. 24-cv-2946, 2025 WL 2506546, at *2 (D.D.C. Sept. 2, 2025) ("Consistent with *Karimova*, the Court concludes that the Department did not violate a clear and direct legal duty . . . ."); *Sabeti v. Blinken*, No. 24-cv-2627, 2025 WL 2457753, at *3 (D.D.C. Aug. 26, 2025) ("[T]he Court finds *Karimova* persuasive: . . . the Department has already . . . satisf[ied] its obligation to act."); *Pour v. Rubio*, No. 25-cv-573, 2025 WL 2374559, at *5 (D.D.C. Aug. 14, 2025) (stating that *Karimova* "contains reasoning that the Court finds persuasive"); *but see Ahmed*, 759 F. Supp. 3d at 10 n.4 ("*Karimova* is an unpublished opinion, and a 'panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition.' This Court has considered *Karimova* but declines to follow it." (quoting D.C. Cir. R. 36(e)(2))); *Haeri Mehneh v. Blinken*, No. 24-cv-1374, 2024 WL 5116521, at *5 (D.D.C. Dec. 16, 2024) ("This Court joins others in finding *Karimova* nonbinding."), *appeal docketed*, No. 25-5001 (D.C. Cir. Jan. 10, 2025); *Rudd v. United States*, No. 25-cv-2646, 2026 WL 946112, at *4 (D.D.C. Apr. 8, 2026) ("[E]ven if *Karimova* is non-precedential, the Court finds its essential reasoning persuasive . . . ."); *Khoshdel Nikkho v. Rubio*, No. 25-cv-4172, 2026 WL 1382983, at *2 (D.D.C. May 18, 2026) ("Though not binding, *Karimova* is persuasive."); *Mumin v. Burns*, No. 25-cv-3024, 2026 WL 1705918, at *4 (D.D.C. Jun. 12, 2026) ("[The Court] finds *Karimova*'s reasoning persuasive.").

As this Court has recognized, unpublished D.C. Circuit opinions may "have persuasive value aside from any precedential value or lack thereof." *United States v. Bikundi*, 73 F. Supp. 3d 51, 55 n.1 (D.D.C. 2014) (citing *Verizon*, 770 F.3d at 968 n.11 (D.C. Cir. 2014)). Notably, unlike many of the Circuit's per curiam orders, *Karimova* was entered following oral argument and includes a rather lengthy exegesis of its legal reasoning. *Karimova*, 2024 WL 3517852, at *1 ("This case was considered on . . . oral arguments of the parties."); *see In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011) (noting that whether there was oral argument is a relevant factor in determining what weight to accord the Circuit's unpublished decisions); *Hart v. Massanari*, 266 F.3d 1155, 1178 (9th Cir. 2001) (noting that typically, one of the key differences between published and unpublished dispositions is the greater "judicial time and effort" invested in the former, while the latter is essentially "a letter from the court to parties familiar with the facts" briefly describing the decision and it's "essential rationale" (quoting Fed. Jud. Ctr., Standards for Publication of Judicial Opinions 3 (1973))). Thus, while *Karimova* may be an unpublished disposition, it more closely resembles a published opinion in that it offers a more "comprehensive factual account[] and precisely crafted holdings." *Hart*, 266 F.3d at 1178.

Further, the Court agrees with other judges that have found "*Karimova*'s facts . . . not meaningfully distinguishable from the facts at issue here." *Datta*, 2025 WL 752643, at *6; *accord Alrubai v. Raines*, No. 25-cv-2741, 2026 WL 1999135, at *3 (D.D.C. Jul. 10, 2026); *Ramizi*, 745 F. Supp. 3d at 259. As here, the plaintiff in *Karimova* was told her application was "officially 'refused'" and placed in "administrative processing in order to verify qualification for [her requested] visa." *Karimova*, 2024 WL 3517852, at *2 (alteration in original) (quoting the record). After almost a year with no movement she brought an unreasonable delay claim under the Mandamus Act and APA, arguing that the consular officer had "breached [her] duty to . . . make a

final decision" on her visa application in violation of the consular officer's duty to act in Section 555(b) of the APA to "conclude a matter presented" to the officer "within a reasonable time." *Id.* at *2–3 (alterations in original) (quoting the record); *see* 5 U.S.C. § 555(b. The plaintiff argued—again like Plaintiff here—that "the consul's duty 'is not discharged by a refusal . . . due to administrative processing, because that is not a final decision' on the visa application." *Karimova*, 2024 WL 3517852, at *2 (alteration in original) (quoting the record). By "final decision," she meant that "the consular officer was required to either issue her a visa or refuse her application, without then also placing it in administrative processing." *Id.* at *3. In short, the facts of *Karimova* are substantially identical to those here.

The Court also finds *Karimova's* legal reasoning persuasive. *See Alrubai*, 2026 WL 1999135, at *3; *Datta*, 2025 WL 752643, at *7; *Ramizi*, 745 F. Supp. 3d at 260. The D.C. Circuit affirmed the district court's dismissal of the plaintiff's Mandamus Act and APA claims, holding that because the plaintiff's visa application was "officially refused" before being placed into administrative processing, the plaintiff's "'matter' ha[d] already been 'conclude[d].'" *Karimova*, 2024 WL 3517852, at *4 (second alteration in original) (quoting 5 U.S.C. § 555(b)). By "officially refus[ing]" the visa application, the court reasoned, the consular officer had done all the law required; that is, the plaintiff had "received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application." *Id.* (citing 22 C.F.R. § 42.81 and 8 U.S.C. § 1201(g)); *see* 22 C.F.R. § 42.81(a) (obligating a consular officer, after a noncitizen has completed an application and participated in an interview, to either "issue the visa" or "refuse the visa"). Nor had plaintiff "identified any law 'plainly prescrib[ing]' that the consular officer *not* put an officially refused visa application in administrative processing." *Karimova*, 2024 WL 3517852, at *3 (alteration in original) (emphasis added) (quoting *Interstate Com. Comm'n v. N.Y., New Haven &*

*Hartford R. Co.*, 287 U.S. 178, 204 (1932)). According to the panel, "[n]othing in federal law speaks to the ability of a consul, after making th[e] decision [to refuse a visa], to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application." *Id.* at *4. Instead, "[i]f the consular officer gets enough new information . . . the officer can determine *sua sponte* that the administrative processing is 'completed' and may then re-open and re-adjudicate the applicant's case." *Id.* at *2 (citing 9 FAM § 306.2-2(A)(a)(2)). The Circuit found that "[u]nless and until that happens . . . the visa application remains officially refused," and there is no "adequate legal basis" that would compel the consular officer "to make yet another 'final decision' on her already-refused visa application." *Id*. at *2, *6.

The Court agrees with that legal analysis. INA Section 1202(e) states that "[t]he application for a nonimmigrant visa . . . *shall* be disposed of as may be by regulations prescribed." 8 U.S.C. § 1202(e) (emphasis added); *see also id.* § 1202(d) (stating "[a]ll nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer" (emphasis added)). The Code of Federal Regulations directs that "[c]onsular officers *must* ensure that the [visa application[5]] is properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106 (emphasis added). Section 41.121(a), which provides greater detail on a consular officer's duty to "adjudicate[e]" nonimmigrant visas, states that "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer *must* issue the visa, [or] refuse the visa." *Id.* § 41.121(a); *see also id.* § 42.81(a) (requiring the same for an immigrant visa). A refusal

[5] Section 41.106 references Forms DS-160 and DS-156. *See* 22 C.F.R. § 41.106. Both DS-160 and DS-156 are application forms for filing nonimmigrant visas. *See* 22 C.F.R. § 41.103(a). Form DS-160 is submitted electronically, while the DS-156 must be signed by the applicant. *See id.* § 41.103(b).

"*must* be based on legal grounds, such as . . . INA 221(g) . . . or other applicable law." *Id.* § 41.121(a) (emphasis added). Those regulations impose a clear, non-discretionary duty on a consular officer to adjudicate a visa application by either granting or refusing it, which may be enforced via the Mandamus Act or APA. *See Datta*, 2025 WL 752643, at *7; *Yaghoubnezhad v. Stufft,* 734 F. Supp. 3d 87, 99–100 (D.D.C. 2024) ("'Granting or refusing a final visa application is a mandatory agency action' under 22 C.F.R. §§ 41.106 and 41.121(a)" (quoting *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020))). As Plaintiff recognizes in her complaint when citing the FAM, a consular officer "cannot temporarily refuse, suspend or hold . . . for future action" a completed visa application. 9 FAM 403.7-3; ECF No. 1, ¶ 74. Rather, "[t]heir course of action is binary: issue or refuse." *Ramizi*, 745 F. Supp. 3d at 260; *see also Karimova*, 2024 WL 3517852, at *1 ("[O]nce the applicant properly applies, the consular officer—by regulation—'*must* issue' or 'refuse' the visa." (emphasis in original) (quoting 22 C.F.R. § 42.81(a)); *see also* 22 C.F.R. § 41.121(a) ("[T]he consular officer must issue the visa, [or] refuse the visa[.]").

That is what the consular officer did here. Plaintiff concedes that the subject visa application was refused by the consular officer and remains refused to date. ECF No. 1, ¶¶ 59–60. That is all that the law requires. The consular officer having "officially refused" this visa application, the "'matter' has . . . been 'conclude[d],'" at least for purposes of any claim that may exist under the Mandamus Act or APA, because Plaintiff has "received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application." *Karimova*, 2024 WL 3517852, at *4 (alteration in original) (quoting 5 U.S.C. § 555(b)); *see also Datta*, 2025 WL 752643, *7 ("[T]he consul's refusal of plaintiff's visa application means that plaintiff's 'matter has already been conclude[d].'" (alteration in original) (quoting *Karimova*, 2024 WL 3517852, at *4)); *Ramizi*, 745 F. Supp. 3d at 260 (same); *Yaghoubnezhad,* 734 F. Supp. 3d at 102 (same). The State

Department "thereby discharged its nondiscretionary duty." *Yaghoubnezhad,* 734 F. Supp. 3d at 101.

Plaintiff responds that a consular officer's legally enforceable duty to adjudicate a visa application is discharged only when a "final" decision on the application is issued that is not subject to further "administrative processing." ECF No. 8 at 12. But "[a]ccording to the Court of Appeals, the APA does not create a non-discretionary duty for defendants to revisit visa applications after they have been 'refused' under section 221(g), no matter what the consulate said it was doing next." *Mojaver*, 2024 WL 4715419, at *3; *accord Jahani v. Rubio*, No. 25-cv-989, 2025 WL 3653542, at *4 (D.D.C. Dec. 17, 2025); *Kachooee v. Allen*, No. 25-cv-139, 2025 WL 2986451, at *3 (D.D.C. Oct. 23, 2025); *Deylami*, 2025 WL 219064, at *5. More, the requirement that a "refusal" under Section 41.121(a) be "final" is nowhere to be found in that regulation or any other. *See* 22 C.F.R. § 41.121(a) (authorizing a "refusal[ ]" under Section 221(g)). Nor can a requirement of finality be found in the INA—Section 1202(e) requires only that nonimmigrant visa applications be "disposed of" as prescribed by regulation. *See* 8 U.S.C. § 1202(e); *see also id.* § 1202(d) (stating that "nonimmigrant visa applications shall be . . . adjudicated by a consular officer"). Nothing in the INA or its implementing regulations suggests that "dispos[ing] of" or "adjudicat[ing]" a nonimmigrant visa application requires more than reviewing and then "issu[ing]" or "refus[ing]" it. *See id.* § 1202(d)–(e); 22 C.F.R. § 41.121 ("Conspicuously absent" from the INA's regulations "is any requirement that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'" *Yaghoubnezhad*, 734 F. Supp. 3d at 101.

Put another way, "nothing in section [41.121(a)] prevents a consular officer from refusing a visa application and then evaluating it further via administrative processing." *Ramizi*, 745 F. Supp. 3d at 260; *accord Karimova*, 2024 WL 3517852, at *3; *Ariani v. Rubio*, No. 25-cv-349,

2025 WL 3653503, at *4 (D.D.C. Dec. 17, 2025); *Baradaran v. Rubio*, No. 24-cv-2946, 2025 WL 2506546, at *3 (D.D.C. Sept. 2, 2025). In fact, the INA's implementing regulations explicitly contemplate further processing and opportunity for administrative relief after a visa has been refused pursuant to Section 221(g). For example, Section 41.121(b)(1) indicates that when a consular officer refuses a visa application, he or she must inform the applicant "whether there is, in law or regulations, a mechanism . . . to overcome the refusal." 22 C.F.R. § 41.121(b)(1). Further, Subsection (c) contemplates continuing review of visa applications by consular supervisors, *see id.* § 41.121(c) ("Nonimmigrant refusals must be reviewed . . . by consular supervisors . . . ."), and references the ability to "overcome . . . ineligibility . . . by the presentation of additional evidence," *id.* Subsection (d) explicitly contemplates the issuance of "advisory opinions" by the State Department "to the consular officer for assistance in considering the case further" after a "visa has been refused." *Id.* § 41.121(d). This process appears to be exactly what Plaintiff has experienced. Her visa application was refused by a consular officer, and she have submitted additional information in the hope that it will "overcome the refusal." *Id.* § 41.121(b)(1); *see* ECF No. 1-8. But that "openness to reconsidering a prior refusal does not mean that the refusal was not an official agency action." *Ramizi*, 745 F. Supp. 3d at 261. Stated differently, "the possibility of reconsideration of a refusal does not mean that the refusal was not a refusal." *Id*. As the D.C. Circuit observed in *Karimova*:

> After a consular officer makes an official decision refusing to issue a visa because the applicant has not carried her burden of showing eligibility, the official may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change. As a result, the consular officer may choose to place an officially refused application in administrative processing. . . . But that refusal may (or may not) be overcome with new information at a later date. *See* 9 FAM § 306.2-2(A)(a). If the consular officer gets enough new information, sometimes from sources other than the applicant, the officer can determine *sua sponte* that the administrative processing is "completed" and may then re-open and re-adjudicate

> the applicant's case. *Id.* § 306.2-2(A)(a)(2). Unless and until that happens, though, the visa application remains officially refused.

*Karimova*, 2024 WL 3517852, at *2. And as the Supreme Court has explained, the "possibility" that an agency "may revise" its decision "based on 'new information'" "does not make an otherwise definitive decision nonfinal." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 598 (2016); *accord Sackett v. EPA*, 566 U.S. 120, 127 (2012). Thus, not only has Plaintiff not "identified any law 'plainly prescrib[ing]' that the consular officer *not* put an officially refused visa application in administrative processing," *id*. at *3 (alteration in original) (emphasis added) (quoting *N.Y, New Haven & Hartford R. Co.*, 287 U.S. at 204), the State Department's regulations expressly allow for consular officers to do so and make clear that the decision to permit post-refusal administrative processing is distinct from the refusal decision itself.

In this case, "[D]efendants already have taken definitive action"—they have refused Plaintiff's visa application—"and [Plaintiff is] effectively asking the Court to order [D]efendants to 'engage in discretionary re-adjudication of that action more quickly.'" *Datta*, 2025 WL 752643, *8 (quoting *Yaghoubnezhad*, 734 F. Supp. 3d at 104). But Plaintiff has not identified any cognizable basis in the law to root that duty. Again, a plaintiff seeking to bring a claim for unreasonable delay under both the APA and the Mandamus Act must assert that the agency in question has been tasked with a discrete, crystal-clear, nondiscretionary legal duty which the government did not fulfill. *See Norton*, 542 U.S. at 64 ("[A § 706(1) claim] can proceed only where a plaintiff asserts that an agency failed to take a *discrete* [] action that it is *required* to take." (emphasis in original)); *In re Ctr. for Biological Diversity*, 53 F.4th at 670 ("A petitioner seeking mandamus must first establish that the agency has violated 'a crystal-clear legal duty.'" (quoting *In re Nat'l Nurses United*, 47 F.4th at 752)). In these circumstances, that means a plaintiff must establish that the government had a nondiscretionary duty to "take further action on [the] visa

application" that has been placed in administrative processing following its refusal under Section 221(g). *Ramizi*, 745 F. Supp. 3d at 262; *see also Karimova*, 2024 WL 3517852, at *4–5 (articulating the duty the plaintiff claimed as one that would "dictate how the agency can handle her rejected paperwork after a decision has been made" or a "demand for a post-adjudication ban on holding her application administratively").

Plaintiff points to sections of the APA and the INA, and its implementing regulations, as potential sources of this duty. ECF No. 8 at 13–15.[6] None of them suffices.[7] Any reliance on Section 555(b) of the APA is misplaced because *Karimova* expressly rejected it as a source of the duty. 2024 WL 3517852, at *3–4. The court of appeals reasoned that Section 555(b) is a "general, good-governance principle[]" that "simply expresses 'a congressional view that agencies should

[6] Plaintiff cites both Section 22, Part 41, and Section 22, Part 42, of the regulations as potential sources of duty. Part 41 governs the adjudication of nonimmigrant visas, while Part 42 governs the adjudication of immigrant visas. *See* 22 C.F.R. §§ 41–41.123 (titled "Visas: Documentation of Nonimmigrants Under the Immigration and Nationality Act"); *id.* §§ 42–42.84 (titled "Visas: Documentation of Immigrants Under the Immigration and Nationality Act"). Here, Applicant Plaintiff seeks adjudication of his nonimmigrant visa application. As such, any reliance on Part 42, which governs immigrant visa applications, appears misplaced.

[7] Plaintiff also cites various provisions of the FAM as a potential source of the duty she claims. ECF No. 1, ¶¶ 10, 41, 46–53; ECF No. 8 at 14–15. The FAM is an internal policy document issued by the Department of State that describes, as relevant here, how it interprets consular officers' responsibilities under the INA to issue or refuse a visa application, and how consular officers may implement those responsibilities in the field. *See, e.g.*, 9 FAM 403.7–403.10; *see Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250–52 (D.C. Cir. 2014) ("An agency action that merely explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule—is a general statement of policy."). Standing alone, it imposes no mandatory duty on Defendants enforceable under the Mandamus Act or APA. *See Ramizi,* 745 F. Supp. 3d at 263 (stating that "the FAM is an 'agency manual[] . . . which lack[s] the force of law" and "imposes no mandatory duty on Defendants" (alterations in original) (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000))); *see also Avagyan v. Blinken*, No. 22-cv-2643, 2022 WL 19762411, at *5 (D.D.C. Sept. 29, 2022) (describing the FAM as "nothing more than general policy statements with no legal force" in case involving review of final agency actions (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 807–08 (D.C. Cir. 2006)); *Pourshakouri v. Pompeo*, No. 20-cv-402, 2021 WL 3552199, at *9 n.11 (D.D.C. Aug. 11, 2021) (noting that the FAM's language indicating the Department's "policy" of processing immediate relative visas within 30 days was "nonbinding" in a *TRAC* factor analysis). Even assuming that the FAM may create binding duties on the Department, Plaintiff has not identified any in this case because the FAM sections they identify either (1) encompass the same duties imposed under the INA and its implementing regulations, thereby adding nothing to the analysis, *see, e.g.*, 9 FAM 504.11-2(A)(a) (requiring consular officers to either "issue[] or refuse[]" the visa "once [it] has been properly completed and executed before a consular officer"); or (2) employ merely aspirational language that falls short of creating a nondiscretionary duty, *see, e.g.*, 9 FAM 504.11-3(A) (noting a supervisory consular officer "should" review a refusal under Section 221(g) "immediately" and "[i]deally . . . on the day of the refusal"). *See Ramizi*, 745 F. Supp. 3d at 263 ("[T]he FAM employs aspirational language ('expects' and 'strive'), not the sort of 'mandatory language' that would 'provide no room for agency discretion.'").

act within reasonable time frames.'" *Karimova*, 2024 WL 3517852, at *3 (quoting *TRAC*, 750 F.2d at 77); *see also* 5 U.S.C. § 555(b) (providing that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"). It concluded that Section 555(b)'s "non-specific directive to all agencies" does not impose on consular officers a "'crystal-clear legal duty' after they have adjudicated a visa application to then forgo any potentially beneficial administrative processing." *Id*. (quoting *In re Ctr. for Biological Diversity*, 53 F.4th at 670); *see also Liew v. Sanders*, 737 F. Supp. 3d 30, 37 (D.D.C. 2024) ("[The plaintiff] cannot rely on the 'general directive' in § 555(b) 'to impose a duty that has no basis in the INA or its implementing regulations.'" (quoting *Yaghoubnezhad*, 734 F. Supp. 3d at 102)); *see also Yaghoubnezhad*, 734 F. Supp. 3d at 102 (noting that, although § 555(b) "implies that the agency, at some point, must reach a final decision, it 'does not speak specifically to the duties of consular officers, and it uses the open-ended phrase "within a reasonable time"'" (quoting *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *6 n.5 (D.D.C. Feb. 7, 2024)).

Plaintiff's reliance on Section 706(1) of the APA does not meaningfully move the needle either. *Datta*, 2025 WL 752643, at * 8 ("Plaintiff's reliance on Sections 706(1) and 555(b) of the APA, as opposed to solely Section 555(b), does not meaningfully distinguish this case from *Karimova*."); *Pasiukevich v. Lawton*, No. 24-cv-3349, 2025 WL 2023207, at *4 (D.D.C. July 17, 2025) ("[U]nder the persuasive logic of *Karimova*, it is unclear how any provision of law requiring that visas be either issued or refused, or otherwise mandating 'agency action,' *see* 5 U.S.C. § 706(1), could remain unsatisfied by the § 221(g) refusal that plaintiff received."); *accord Rajabi v. Rubio*, No. 24-cv-1968, 2026 WL 252233, at *4 (D.D.C Jan. 30, 2026). It provides that a court may "compel agency action . . . unreasonably delayed." 5 U.S.C. § 706(1). Like Section 555(b),

it is a general directive that says nothing about a consular officer's obligations with respect to processing visa applications following refusal. Like Section 555(b), "a claim under Section 706(1) 'can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*,' a threshold requirement that [Plaintiff has] not met." *Datta*, 2025 WL 752643, *8 (quoting *Norton*, 542 U.S. at 64). "[A]bsent 'a specific, unequivocal command' from Congress requiring State to issue 'final' refusals or to complete 'administrative processing,' State has not 'unlawfully withheld' any action that the Court has jurisdiction to 'compel' under § 706(1)." *Yaghoubnezhad*, 734 F. Supp. 3d at 102; *Ramizi*, 745 F. Supp. 3d at 262 (same).

Any reliance on INA Section 1202 is also unavailing. *See* ECF No. 8 at 19. Section 1202(d) provides that "[a]ll nonimmigrant visa applications *shall* be reviewed and adjudicated by a consular officer."[8] 8 U.S.C. § 1202(d) (emphasis added). It "concludes a [] paragraph describing the documentation that visa applicants must provide and to whom they must provide it." *Ramizi*, 745 F. Supp. 3d at 262 (quoting *Ali v. U.S. Dep't of State*, 676 F. Supp. 3d 460, 469 (E.D.N.C. 2023)); *see* 8 U.S.C. § 1202(b)–(d). "Read in context, this sentence [only] cabins the State Department's discretion as to *who* may review and decide immigrant visa applications," *i.e.*, that is, it directs consular officers, and no one else, to adjudicate visa applications. *Ramizi*, 745 F. Supp. 3d at 262 (alteration in original) (emphasis in original) (quoting *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 15 (D.D.C. 2022)); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 2021) ("The INA confers upon consular officers exclusive authority to review

[8] To the extent Plaintiff also relies on Section 1202(e), it is also unavailing. It provides that "[t]he application for a nonimmigrant visa or other documentation as a nonimmigrant *shall* be disposed of as may be by regulations prescribed." 8 U.S.C. § 1202(e) (emphasis added). This subsection merely directs consular officers to "dispose of" nonimmigrant visa applications as directed by regulation, and does not impose any additional, discrete, crystal-clear duty. And, as stated, the regulations direct only that a consular officer "issue" or "refuse" the visa. *See* 22 C.F.R. § 41.121(a).

applications for visas, precluding even the Secretary of State from controlling their determinations.”).

In any event, on its face, Section 1202(d) says nothing about consular officers taking further action on a visa application that has been placed in administrative processing following its refusal under Section 221(g). Even if it does impose a nondiscretionary duty, the Court would find, consistent with the Circuit’s decision in *Karimova*, that the duty was fulfilled when the consular officer refused Plaintiff’s visa application.[9] *See Ramizi*, 745 F. Supp. 3d at 262; *Yaghoubnezhad*, 734 F. Supp. 3d at 99–100. As another judge in this district has held, “the fact that Karimova was moving under the APA and an unreasonable delay theory, but that [a different] plaintiff is moving under the [INA] . . . does not make a difference.” *Ibrahim*, 2024 WL 4103702, at *3. Plaintiff is asking the Court to order the consulate “to adjudicate all visas ‘through conclusion.’” *Id.* (quoting the record). But “one cannot read *Karimova* as saying anything other than a 221(g) refusal and placement in administrative processing *was* a conclusion.” *Id.* (emphasis in original)); *see Karimova*, 2024 WL 3517852, at *4.[10]

Finally, Plaintiff points to 22 C.F.R. § 42.81(e) to establish a duty to issue a final decision on her refused visa application. ECF No. 8 at 29. But that section is, by its terms, inapplicable to

[9] Plaintiff similarly points to rules issued pursuant to the INA which require consular officers to “properly and promptly process[] visa applications,” and then to “issue” or “refuse” them. *See* 22 C.F.R. § 41.106 (“Consular officers must ensure that the Form DC-160 or, alternatively, Form DS-156 is properly and promptly processed in accordance with the applicable regulations and instructions.”); *id.* § 41.121(a) (“When a visa application has been properly completed and executed in accordance with the provisions of INA and the implementing regulations, the consular officer must issue the visa, [or] refuse the visa . . . ”); *id.* § 42.81(a) (same with respect to immigrant visas). The Court addressed 22 C.F.R. § 41.121 in more detail *infra*, but, as a general matter, any duties imposed by those regulations “were satisfied when [the subject] application was ‘refused.’” *Datta*, 2025 WL 752643, at *8 (citing *Karimova*, 2024 WL 3517852, at *4); *Hemmat*, 2024 WL 4210658, at *4 (same).

[10] Similarly unavailing is any reliance on the various fee schedules for visa applicants. *See* 31 U.S.C. § 9701(b) (authorizing agencies to “prescribe regulations establishing a charge for a service or thing of value provided by the agency”); 22 C.F.R. §§ 22.1 (establishing a schedule of fees for consular services). To the extent State Department regulations requiring the collection of visa application fees “create[] a duty to complete the corresponding service,” the Court would find that “the consular officer did so by issuing the refusal decision.” *Hemmat*, 2024 WL 4210658, at *4; *Datta*, 2025 WL752643, at *8 (same); *see also* ECF No. 1-8.

nonimmigrant visa applications because it applies only to the "[p]rocedure in refusing *immigrant* visas." *See id.* § 42.81. The "[r]efusal of nonimmigrant visas," like Plaintiff's application here, is governed by a different regulation—22 C.F.R. § 41.121—which does not include an equivalent provision. *See id.* § 41.121. In any event, Section 42.81(e), even were it applicable to a nonimmigrant visa application, would not help Plaintiff. Section 42.81(e) provides that "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). While other courts *have* found that this language imposes a duty on consular officers to reconsider refused visa applications if the applicant has submitted additional evidence, they have reached this conclusion with little or no analysis of Section 42.81(e)'s language. *See, e.g.*, *Haeri Mehneh*, 2024 WL 5116521, at *6 (stating conclusively that "Section 42.81(e) of the INA creates a nondiscretionary duty" without discussing the statutory language); *Sheikhalizadehjahed v. Gaudiosi*, No. 24-cv-1136, 2024 WL 4505648, at *8 (E.D. Cal. Oct. 16, 2024) (stating Section 42.81(e) "creates a nondiscretionary duty to reconsider a refusal under some circumstances" without statutory analysis). Others include only a bare-bones analysis focusing on its inclusion of the word "shall" to establish a mandatory duty. *See, e.g.*, *Ghannad-Rezaie v. Laitinen*, 757 F. Supp. 3d 148, 153 (D. Mass. 2024) (emphasizing "shall" and noting "[u]nlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement" (quoting *Kingdomware Techs., Inc v. United States*, 579 U.S. 162, 171 (2016))); *Rivas v. Napolitano*, 714 F.3d 1108, 1111–12 (9th Cir. 2013) (stating that the "mandatory language used in the regulation makes the act of reconsideration non-discretionary" and "its plain terms imposes a nondiscretionary, ministerial duty"). This Court agrees with the general proposition that "shall" *usually* indicates a mandatory duty. *See Ballou v. Kemp*, 92 F.2d 556, 558–59 (D.C. Cir.

1937). Nonetheless, the failure to construe the use of "shall" in its statutory context makes these cases ultimately unpersuasive. *See id.* (noting that the word "shall" may be construed as permissive when the context indicates it should receive such a construction); *cf. Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) ("Statutory language . . . 'cannot be construed in a vacuum. . . . [T]he words of a statute must be read in their context[.]" (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))); *see also Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 549 (D.D.C. 2005) (stating that to identify a nondiscretionary duty, a court must "interpret[] . . . the intent of the regulation").

Better is the analysis offered by Chief Judge Myers of the Eastern District of North Carolina in the recent decision *Ramizi v. Blinken*. That decision found that Section 42.81(e) does *not* impose a discrete, nondiscretionary duty on the consular officer "to complete the administrative processing of [the plaintiff's visa] application." *Ramizi*, 745 F. Supp. 3d at 263. To reach that conclusion the court considered all of Section 41.81(e)'s language, finding that any mandatory duty to reconsider that it imposed was triggered only upon the consular officer determining that the visa applicant had adduced further "evidence *tending to overcome* the ground of eligibility.'" *Id.* at 263 (emphasis in original) (quoting 22 C.F.R. § 41.82(e)). That determination, *Ramizi* reasoned, requires "the exercise of discretionary judgment by the consular officer reviewing such evidence," which is a task that is "necessarily [] highly subjective" and for which "there exist no strict standards." *Id.* (quoting *El-Khader v. Monica*, 366 F.3d 562, 567 (7th Cir. 2004)). In fact, Section 1182 of the INA contains "myriad grounds on which a foreign national may be denied admission to the United States, many of which entail challenging and subjective judgment-calls." *Id.; see* 8 U.S.C. § 1182(a) (identifying numerous "[c]lasses of aliens ineligible for visas or admission"). It is only when the consular officer makes that discretionary "determination that the

applicant has adduced additional evidence that tends to overcome the ground(s) of ineligibility on which the refusal was based" that any "duty to reconsider a refused application under Section 42.81(e)" is triggered. *Ramizi*, 745 F. Supp. 3d at 264.

That determination is not subject to judicial review. That exercise of independent judgment by the consular officer is "largely immune from judicial control" because it is "a fundamental sovereign attribute," *Shaughnessy v. United States*, 345 U.S. 206, 210 (1953), "exclusive" to consular officers, "precluding even the Secretary of State from controlling their determinations," *Saavedra Bruno*, 197 F.3d at 1156. As courts have recognized, such decisions are "not standard administrative fare," "ar[ise] within a field that is 'vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power," "generally fall outside the Judicial Branch's wheelhouse," *Karimova*, 2024 WL 3517852, at *5 (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–598 (1952)), "implicate relations with foreign power," "involve classifications defined in the light of changing political and economic circumstances," and "are frequently of a character more appropriate to either the Legislature or the Executive," *Yaghoubnezhad*, 734 F. Supp. 3d at 101 (citation modified) (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021))). Accordingly, *Ramizi* concluded that "[a] court may no more consider whether a foreign national has adduced evidence 'tending to overcome the ground of ineligibility' on which the refusal was based [thus triggering reconsideration] than it may consider whether the refusal was proper in the first instance." *Ramizi*, 745 F. Supp. 3d at 264 (quoting 22 C.F.R. § 42.81(e)).

The *Ramizi* court also noted that "even if a refused applicant does adduce [evidence tending to overcome the initial grounds for refusal], the consular officer's obligation is limited to 'reconsider[ation],'" which does not necessarily "require the government to take a discrete further

action with respect to the status of an application." *Id.* at 264 n.5 (alteration in original) (first quoting 22 C.F.R. § 42.81(e); and then quoting *Berenjian v. Blinken*, No. 24-cv-663, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024)). Unlike the language used in 22 C.F.R. § 42.81(a), which requires a consular officer to either "issue" or "refuse" the visa, the process of "reconsider[ation]" under Section 42.81(e) does not clearly mandate a subsequent formal decision. As *Ramizi* noted,"[w]here Congress uses specific terms in one section of a statute, but not another, 'it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion,' and courts should 'refrain from concluding that the differing language in the two subsections has the same meaning in each.'" *Ramizi*, 745 F. Supp. 3d at 264 n.5 (citation modified) (quoting *Russello v. United* States, 464 U.S. 16, 23 (1983)). For that additional reason, *Ramizi* held that any duty to reconsider a refused visa application by the consular officer is not mandatory. The Court finds *Ramizi*'s interpretation of Section 42.81(e) persuasive and adopts it here. [11]

* * * * *

For all these reasons, the Court finds that Plaintiff has not identified a crystal-clear, nondiscretionary duty requiring the consular officer to do anything other than what he or she has already done—refuse the visa application under Section 221(g) and place it in administrative processing. That duty having been fulfilled, as the Circuit found in *Karimova*, "nothing in federal law" imposes a nondiscretionary duty on a consular officer to complete the administrative processing of their visa application and "make yet another 'final decision' on [their] already-refused visa application." *Karimova*, 2024 WL 3517852, at *4, *6. Rather, any further action the consular officer may take on the refused visa application is discretionary and not subject to the "exceptional and rare relief of an order compelling the consular officer" to do something more—

[11] Because the Court concludes that Defendants have fulfilled any mandatory statutory duty, the Court does not reach the issue whether Defendants' have unreasonably delayed the performance of that duty under the *TRAC* factors.

much less to do it more quickly. *Id.* at *6. As such, Defendants' motion to dismiss must be granted for failure to state a claim under either the APA or the Mandamus Act.

Nonetheless, like other judges, this Court is troubled by the direction the *Karimova* decision leads: "[I]nterpreting the refusal-for-administrative-processing approach to be the conclusion of the matter before the agency has the potential to shield from judicial review unreasonable delays that [would otherwise be] prohibited by the APA." *Awal v. U.S. Dep't of State*, No. 24-cv-382, 2024 WL 4979661, at *9 (D. Minn. Dec. 4, 2024). It may also incentivize consular officers to "refuse applications out of hand and then begin the true deliberation process thereafter," leaving visa applicants languishing in a state of administrative limbo with "no possibility for judicial oversight of untimely decision making." *Haeri Mehneh*, 2024 WL 5116521, at *5; *see also Datta*, 2025 WL 752643, at *8 ("*Karimova* gives agencies carte blanche to administratively process noncitizens' visa applications *ad infinitum* with no avenue for judicial review."). But recognizing that problem and having the power to fix it are two different things.

"For more than a century, [the Supreme Court] has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Dep't of State v Munoz*, 602 U.S. 899, 907 (2024) (quoting *Trump v. Hawaii*, 585 U.S. 667, 702 (2018)); *see also Harisiades*, 342 U.S. at 588–89 ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."). Given that these "types of claims generally fall outside the Judicial Branch's wheelhouse," *Karimova*, 2024 WL 3517852, at * 5, the Court agrees with the conclusion of another judge in this

District that "the statutory gap that, in theory, allows agencies to issue pro forma refusals while continuing to administratively process visa applications is best filled by Congress, not this Court." *Datta*, 2025 WL 752643, *9.

**B. Consular Nonreviewability**

Defendants also argue that Plaintiff's claims should be dismissed for the independent reason that the consular officer's decision to refuse the visa application was final and therefore not subject to judicial review under the consular nonreviewability doctrine. *See* ECF No. 7 at 10–14. Consular nonreviewability "prevents a federal court from second-guessing a United States consular officer's decision to issue or withhold a visa." *Baan Rao Thai Rest.*, 985 F.3d at 1023. The doctrine arises from consular officers' "exclusive" authority "to review applications for visas, precluding even the Secretary of State from controlling their determinations." *Saavedra Bruno*, 197 F.3d at 1156. Under that doctrine, courts refrain from reviewing "substantive decisions to approve or deny a visa" or commanding particular results. *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 12 (D.D.C. 2022) (emphasis omitted).

Some judges in this Circuit have found that the nonreviewability doctrine does not bar judicial review of visa applications that have been refused pending administrative processing because such refusals have been interpreted as not "sufficiently final to warrant the application of [the] doctrine." *Vulupala*, 438 F. Supp. 3d at 98; *see, e.g.*, *Nine Iraqi Allies Under Serious Threat v. Kerry*, 168 F. Supp. 3d 268, 292 (D.D.C. 2016) ("[B]ecause the applications . . . remain in 'administrative processing' and, therefore, have not been finally refused, the doctrine of consular nonreviewability does not bar [the plaintiffs'] claims."); *Al-Gharawy.*, 617 F. Supp. 3d. at 16 (finding that the consular nonreviewability doctrine did not apply because "the factual allegations in the complaint . . . indicate that no final decision has been made"). These courts have reasoned that such

visa applications are "provisionally refused pending a final decision." *Al-Gharawy*, 617 F. Supp. 3d at 11.

*Karimova* casts significant doubt on that analysis. Again, it described a visa refusal under Section 221(g) as a "matter . . . conclude[d]." *Karimova*, 2024 WL 3517852, at *4 (quoting 5 U.S.C. § 555(b)). Despite a consular officer "choos[ing] to place an officially refused application in administrative processing," which "may (or may not)" lead to the refusal being "overcome with new information at a later date," *Karimova* instructs that "[u]nless and until that happens . . . the visa application remains officially refused." *Id.* at *2. *Karimova* thus suggests that "a consular officer's refusal of a visa application is a final decision," which may "upend[] prior decisions examining the consular nonreviewability doctrine." *Datta*, 2025 WL 752643, at *5–6; *see also Ibrahim*, 2024 WL 4103702, at *3 ("While it troubles this Court, one cannot read *Karimova* as saying anything other than a 221(g) refusal and placement in administrative processing *was* a conclusion." (emphasis in original)). If the refusal is "final agency action," 5 U.S.C. § 704, as *Karimova* suggests, then the applicant could challenge the refusal, for instance, under APA Section 706(2) as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A). A challenge to a "final visa determination[]," however, would implicate consular nonreviewability. *Giliana v. Blinken*, 596 F. Supp. 3d 13, 18 (D.D.C. 2022) (quoting *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020)).

Nonetheless, *Karimova* did not decide how the principle of consular nonreviewability applies in the context of a Section 221(g) visa refusal because the visa applicant "challenge[d] the timing rather than the content of a consular visa decision." *Karimova*, 2024 WL 3517852, at *6. The court thus dismissed the visa applicant's Mandamus Act and APA claims for failure to identify a non-discretionary duty that the consular officer had not already fulfilled. *Id.* Here, too, Plaintiff

challenges only the timing of the consular decision, not the substance of the consular officer's refusal of the visa application. Because Plaintiff does not challenge the substance of the refusal, the Court need not decide whether that refusal is judicially reviewable. Accordingly, the Court will follow *Karimova*'s lead on that point as well, and grant Defendants' motion to dismiss for failure to state a claim. *Id.*; *see also Datta*, 2025 WL 752643, *6 ("[T]he Court need not determine the extent to which *Karimova* upends prior decisions examining the consular nonreviewability doctrine because there are independent reasons to dismiss plaintiff's claims.").[12]

## IV. CONCLUSION

For the reasons stated, the Court will grant Defendants' motion to dismiss. Plaintiff has failed to establish that Defendants have a crystal-clear, nondiscretionary duty to take further action on her visa application that has been placed in administrative processing following its refusal under Section 221(g). Rather, the only nondiscretionary duty Plaintiff has identified is for Defendants to "issue" or "refuse" her visa application. That duty was fulfilled when her visa application was refused by the consular officer. Accordingly, there is nothing for this Court to compel Defendants to do.

A separate Order dismissing the complaint will issue.

Date: August 12, 2026

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

[12] Plaintiff does purport to raise an APA Section 706(2) claim—which provides a remedy for a substantively unlawful final agency action—but nowhere challenges the substance of the refusal. Instead, she claims only that Defendants have unlawfully withheld agency action. *See* ECF No. 1, ¶¶ 100–103. Nor does she ask the Court to "hold unlawful and set aside" any agency action. *See* 5 U.S.C. § 706(2). Rather, she seeks only "an order compelling Defendants and those acting under them to perform their duty to adjudicate" her application. ECF No. 1 at 29. Plaintiff's claim for agency action unlawfully withheld fails for the reasons already given, whether brought under Section 706(1) or 706(2). *Cf. Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004) ("The plaintiffs in *National Wildlife Federation* would have fared no better if they had characterized the agency's alleged 'failure to revise land use plans in proper fashion' and 'failure to consider multiple use,' in terms of 'agency action unlawfully withheld' under § 706(1), rather than agency action 'not in accordance with law' under § 706(2)." (citation omitted) (quoting *Lujan v. Nat'l Defs. of Wildlife*, 497 U.S. 871, 891 (1990)).